**In re Anthony CROSS, Debtor.**

**Mary RIGGS, Plaintiff,**

v.

**Anthony CROSS, Defendant.**

**Bankruptcy No. 91–12998.**

**Adv. No. 92–1021.**

United States Bankruptcy Court,
D. Rhode Island.

July 27, 1993.

---

7. See text of § 2–401 in footnote 5.

Gloria C. Dahl, Morneau & Murphy, Jamestown, RI, for debtor/defendant.

Paul Morley, Norwell, MA, for plaintiff.

Jason Monzack, Kirshenbaum & Kirshenbaum, Cranston, RI, Chapter 7 Trustee.

## DECISION AND ORDER DENYING DISCHARGE AND REFERENCE TO UNITED STATES ATTORNEY

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on Creditor Mary Riggs' Complaint Objecting to the Discharge of Anthony Cross, pursuant to 11 U.S.C. § 727. Riggs alleges that Cross concealed assets through a non-profit corporation called Sail America, Inc., and that he filed false bankruptcy schedules by intentionally failing to disclose assets, income, and business activities. The Debtor denies profiting from Sail America and states that any omissions or false statements in his schedules were either inadvertent, or the fault of his attorney. Now before us for determination are the legal and factual issues of whether Cross' conduct is sufficiently egregious to deny him a discharge pursuant to § 727 of the Code. This is a fact-specific proceeding, wherein the credibility of witnesses determines the result.

## BACKGROUND

In 1986, Anthony Cross incorporated Sail America, a non-profit organization, for the stated purpose of providing "free sailing lessons to combat juvenile delinquency." (Articles of Organization, Debtor's Ex. N., at 1.) The main source of funding for the corporation was from the donation of private boats, which Mr. Cross would solicit, then evaluate and decide whether the corporation should refurbish and keep them, or sell the boats to produce revenue. Sail America provided prospective donors with appraisals of their boats for tax purposes, and if the numbers worked out for all concerned, Sail America would be the donee/owner of a free boat.

Initially, Sail America operated out of Lewis Wharf in Boston, Massachusetts, in space provided by Mary Riggs, the objecting creditor herein. During the entire period of its operation in Boston, Sail America provided, at most, only a few boat rides to troubled kids, and in June 1990, Cross decided to leave Boston and to concentrate and coordinate Sail America's efforts in Rhode Island with the group, Ocean Tides. (Minutes of June 10, 1990 Meeting, Debtor's Ex. M, at 1.)·

Riggs became a judgment creditor of Mr. Cross as a result of her failed attempt to purchase one of the many boats that passed through Sail America's inventory. The details of this incident are as follows— In June 1988, Cross went to Kentucky to pick up the vessel *Yellow Jacket,* which was being donated to Sail America by Dr. Larry Hall, and gave Dr. Hall an appraisal stating the market value of the boat to be $185,000.[1] En route from Kentucky, problems developed which required Cross to leave the disabled boat in Charleston, South Carolina, and he returned to Rhode Island, using alternate transportation. While it was still in South Carolina, and based upon Cross' verbal description of the boat, Riggs agreed to purchase *Yellow Jacket* for $20,000 "as is," and she gave

---

**1.** The "appraisal," so called, was done by Victor Barbier, who apparently was available to Sail America, on request, to furnish opinions and numbers that would satisfy the tax shelter requirements of prospective boat donors. (*See* Barbier Appraisal, June 15, 1988, Plaintiff's Ex. 7, at 1.) Valuation shenanigans like this really

him a $10,000 deposit.[2] When a higher offer came along, however, Cross reneged on his agreement with Riggs and he sold the boat to another party for $24,000, and returned Riggs' deposit. Upset by this, she filed suit in Massachusetts and obtained judgment against Sail America in November 1990 in the amount of $20,000, and against Anthony Cross personally, in the amount of $35,000.

This Chapter 7 case was filed on November 30, 1991. In the Statement of Affairs Cross failed to list himself as a director, secretary, or treasurer of Sail America, all positions which he held prior to his bankruptcy and continues to hold today. In fact, Cross makes no mention whatsoever of Sail America, but instead declares under oath that his sole source of income is derived from his occupation as a full time insurance salesman.[3]

■ The Plaintiff alleges that the Debtor's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(2), (3), and (4). These sections provide:

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

11 U.S.C. § 727(a). Under § 727 the objecting party has the burden of proving her case, which must be established by a preponderance of the evidence. *See* Fed. R.Bankr.P. 4005; *McGowan v. Beausoleil (In re Beausoleil)*, 142 B.R. 31, 36 (Bankr. D.R.I.1992); *Pyramid Technology Corp. v. Cook (In re Cook)*, 146 B.R. 934, 940 (Bankr.E.D.Penn.1992). For reasons discussed more fully below, we find that Plaintiff, Mary Riggs, has met her burden under 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4)(A), and that discharge should be denied in this case.

## DISCUSSION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

Mr. Cross has assumed the unrealistic burden of expecting this Court to believe that Sail America was established for the benevolent purpose of saving troubled and disadvantaged youths by exposing them to recreational sailing, and that he received no personal benefit from the corporation other than the satisfaction derived from having "turned around the lives of inner city kids," for whom he has great affection.

---

highlight the absence of morality throughout Cross' Sail America operation.

**2.** The deposit consisted of two checks, both payable to Sail America in the amount of $5,000 each. One check dated October 13, 1988 (Plaintiff's Ex. 5) was endorsed by Anthony Cross *personally*, but the check cleared anyway. This is indirect evidence, at least, that such practice was business as usual, even for the bank.

**3.** While Cross tries to shift the blame for these omissions to his attorney, we conclude as a matter of law that he is fully responsible, since he "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). In addition to his legal responsibility for said material omissions and misstatements, we are most skeptical, on factual grounds, of Cross's claim that he gave accurate and complete information to his attorney, but that said information never found its way into his sworn schedules.

Cross insists that he is a full time insurance salesman, that Sail America was and is a weekend endeavor that is *strictly* philanthropic in nature, and that his personal income consists entirely of commissions as an insurance salesman. To the contrary, we find that *all* of Mr. Cross' testimony is disingenuous, that his characterization of the purpose of and the activities conducted by Sail America on behalf of "poor kids" is totally without credible supporting evidence, and that the corporation was used and manipulated by Cross for his personal financial gain. All issues of veracity in this regard are resolved against him.

■ The evidence is clear that the operation of Sail America was and is Mr. Cross' primary interest *and* livelihood, and that while it may not always have produced a lucrative, continuous cash flow for him, Sail America provided the means for Mr. Cross to live in the manner in which he had long been accustomed, i.e. lots of golf and sailing.[4] We also find that his love for these activities has been fulfilled and made possible through the use of very questionable tax loopholes, aided by inflated and false appraisals of donated boats. That he spent nine weeks attempting to transport the *Yellow Jacket* from Kentucky to Rhode Island contradicts Cross' contention that his involvement with Sail America was no more than a part time avocation. Furthermore, Sail America's 1991 tax return (Debtor's Ex. L) shows a $27,398 liability for "Officer Loans, Etc." Cross tells us this was the repayment of a loan which he had made to the corporation, but there is no evidence to support the existence of such an obligation, and we reject as ludicrous the notion that during any time relevant to this proceeding, Mr. Cross had the means to make such a loan.[5] We find this payment was a direct monetary benefit paid by Cross to himself, from the corporation which he was clearly misusing, and that this concealment from his schedules is itself a sufficient ground to require denial of discharge under 11 U.S.C. § 727(a)(2)(A).

■ We are also satisfied that Plaintiff has met her burden with respect to § 727(a)(3). We stated in *In re Beausoleil* that:

> When a debtor's right to discharge is challenged under that section, the initial burden to establish that the debtor's discharge should be denied is on the objecting creditor. Thereafter, the burden shifts to the debtor who must, under § 727(a)(3), establish either that the debtor maintained adequate books and records from which his financial condition could be ascertained, or that the failure to keep adequate books and records was justified under the circumstances.

142 B.R. at 37. When questioned about the existence of supporting documentation for the information contained in his personal and Sail America tax returns, Cross stated that he retains all of the 1099 forms received from insurance companies, and has a daily planner showing his activities on any given day. The accountant who testified in Cross' behalf stated that when he prepared the Sail America tax returns, he was not provided with any actual books and records, only summaries prepared by Cross. If they exist, Cross would have produced these alleged books and records, instead of casually stating "I left them at home." Mr. Cross is a shrewd man, and he understands the importance of having available the documentation that would be required to support his version of his business and financial activities. We find that there are no such records. Alternatively, if such records do exist, they would not support his position.

■ On the issue of credibility (which permeates this proceeding), the final straw

---

**4.** The Debtor's wife is presently the owner of one such donated boat, a 33 foot Pearson which she received from Sail America in October 1990, in exchange for another smaller boat. This boat, the *Damboat*, was clearly the best of Sail America's inventory in 1990.

**5.** Mr. Cross' 1990 federal income shows gross income from insurance sales of $20,087, and an adjusted gross income of $8,133. (Debtor's Ex. Q.) It is inconceivable that Cross, with a below poverty level income, could belong to a country club, loan over $27,000 to Sail America, maintain a home, an automobile, and spend as much time as he does sailing and golfing.

for the Debtor was the testimony of one of his own witnesses, James Felton, who testified that he had lectured as an instructor in a Captain's Course run by Cross, for which students paid tuition of $500,[6] and that Cross still owes him approximately $6,000 for his services.[7] Felton also testified that in satisfaction of the debt, Cross promised that he would "give him a good boat from Sail America, as soon as one was located." In fact, Mr. Felton testified that since Cross was a man of his word, he was still hoping to receive a nice boat from Sail America. Based upon the entire record, we conclude that Sail America has always been Cross' alter ego, that he operated (and probably still uses) Sail America for his personal financial gain, *tax free*, and that his attempt to connect this endeavor with a charitable "save the children" purpose is an affront to common sense.

We agree with and adopt Judge Paskay's analysis of 11 U.S.C. § 727(a)(4) that:

Even if undisclosed assets are worthless or unavailable to creditors, a debtor has an obligation to make full disclosure. The subject matter of a false oath is "material" if it bears a relationship to the debtor's business transactions or assets. There is no question that deliberate omissions warrant a denial of the debtor's discharge. Likewise, when a debtor makes numerous omissions from his Statement of Affairs and Schedules, the omissions together may constitute a pattern demonstrating a reckless disregard for the truth.

*Messing v. Urban (In re Urban)*, 130 B.R. 340, 344 (Bankr.M.D.Fla.1991); *see also In re Beausoleil*, 142 B.R. at 36–37. It is undisputed that Cross, inter alia, failed to disclose his involvement with Sail America, that he failed to report a $25,000 capital gain on the sale of his home in 1990,[8] and that he failed to list James Felton as a creditor in his Schedules. At a minimum, the Debtor's conduct, viewed in its entirety, demonstrates a pattern of subterfuge and intentional disregard for the truth, and we are satisfied based on the record before us, and based upon the totality of circumstances, that Anthony Cross' discharge should be denied under §§ 727(a)(2), (a)(3) and (a)(4).

Pursuant to 18 U.S.C. §§ 152, 3057, a copy of this Decision and Order is being forwarded to the Office of the United States Attorney for the District of Rhode Island for the purpose, if it is deemed appropriate, of investigating Sail America's non-profit status, and possible violations of the bankruptcy and tax laws.

Enter Judgment consistent with this opinion.

## JUDGMENT

In accordance with Fed.R.Bankr.P. 9021, and for the reasons set forth in the DECISION AND ORDER issued by the Honorable Arthur N. Votolato, Jr., United States Bankruptcy Judge, on July 27, 1993, Judgment is hereby entered.

---

**6.** Although we are unable to determine from the evidence just when, or if, Cross stopped offering the Captain's Course, no profit or loss from this enterprise appears in the Statement of Affairs or Schedules.

**7.** Cross also failed to list Felton as a creditor, and we find this omission in his schedules was not merely another oversight, as Cross suggests.

**8.** It was revealed in cross-examination that Cross sold his home in 1990 and received cash proceeds of $25,000. He stated that he used the money to pay bills, and attempted to excuse the nondisclosure as an "oversight." We have already found Mr. Cross' testimony to be devoid of credibility, and reject his claim that this was just another oversight.